IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOE,** | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **WAL-MART STORES EAST, LP** | : | |
| *Defendant.* | : | NO.  25-cv-1723 |

MEMORANDUM

**KENNEY, J.**                                                                                                                   October 1, 2025

Plaintiff Jane Doe brings this suit against Defendant Wal-Mart Stores East, LP ("Walmart" or "Defendant") claiming that Defendant discriminated against her in violation of 42 U.S.C. § 2000e-2(a) ("Title VII") (Count I), ECF No. 14 ("Am. Compl.") ¶¶ 44–52; failed to accommodate her and terminated her employment in violation of 42 U.S.C. § 12101, et seq. ("Americans with Disabilities Act") (Count II), *id.* ¶¶ 53–62, and 43 Pa.C.S.A. § 951, et seq. ("Pennsylvania Human Relations Act" or "PHRA") (Count III), *id.* ¶¶ 63–70; and retaliated against her by terminating her employment in violation of 29 U.S.C. § 2601, et seq. ("Family and Medical Leave Act" or "FMLA") (Count IV), *id.* ¶¶ 71–76. In these Counts, Plaintiff alleges discrimination on the basis of her sex/gender (Counts I and III), *id.* ¶¶ 46–48, 66, and disability (Counts II and III), *id.* ¶¶ 57, 66, as well as retaliation for requesting medical leave (Count IV), *id.* ¶¶ 71–76.

Presently before the Court is Defendant's Partial Motion to Dismiss Plaintiff Jane Doe's First Amended Complaint, ECF No. 18 ("Motion to Dismiss"), Plaintiff's Brief in Opposition, ECF No. 19, and Defendant's Reply, ECF No. 20. Defendant moves to dismiss Counts I and IV of the Amended Complaint in their entirety and Count III only to the extent that it purports to allege sex discrimination. ECF No. 18-2 at 1.

For the reasons set forth below, the Court will grant in part and deny in part Defendant Walmart's Motion to Dismiss (ECF No. 18). Count I of the Amended Complaint is dismissed in its entirety and Count III is dismissed only to the extent that it alleges sex discrimination. Count IV remains. An appropriate Order will follow.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

The below facts are taken from the Amended Complaint and are accepted as true at the motion-to-dismiss stage. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Defendant hired Plaintiff on May 1, 2022 as a personal shopper working out of its store at 9745 Roosevelt Boulevard in Philadelphia, PA. Am. Compl. ¶ 9.

Prior to going to work, in the early morning of April 23, 2023, Plaintiff was sexually assaulted. *Id.* ¶ 10. Later, the same day as the traumatic event, Plaintiff went to work for her scheduled shift. However, she was able to work for only an hour before she began to process the traumatic event. *Id.* ¶¶ 11–12. Plaintiff told her Walmart team leader, Dimitri, that she was experiencing an emergency and asked to leave, but he denied the request. *Id.* ¶¶ 13–14.

Plaintiff attempted to continue working, but after approximately another hour of working, a Walmart customer approached Plaintiff and told her she was "too pretty to look so sad." *Id.* ¶ 15. Unable to keep her composure, Plaintiff explained to Dimitri that she had been a victim of sexual assault earlier that day and asked to leave. *Id.* ¶ 16. Dimitri agreed that Plaintiff could leave and stated he would take care of it so that she would not be penalized for leaving early. *Id.* ¶ 17. The following two days were Plaintiff's usual scheduled days off. *Id.* ¶ 18.

Plaintiff was scheduled to return to work on April 25, 2023 but realized that she was not ready to return to work due to the sexual assault. *Id.* ¶ 19. She called Dimitri to ask how she could request additional time off work, and Dimitri advised her to contact Defendant's third-party leave administrator, Sedgwick, and to call out from work using Defendant's call-out number. *Id.* ¶¶ 20–

21. Plaintiff spoke with a representative from Sedgwick who asked her a number of questions including how many days she would need to be out and how to categorize her claim. *Id.* ¶ 22. Plaintiff requested three days off and stated that she was unsure how to categorize her claim. *Id.* ¶ 23. Sedgwick's representative told Plaintiff that she would input the leave as "medical leave." *Id.* ¶ 24. Believing she was now covered under medical leave, Plaintiff used Walmart's call-out number to call out for her next three scheduled days of work (April 26, 27, and 28). *Id.* ¶ 25.

On April 29, 2023, Plaintiff worked without incident on her scheduled work day. *Id.* ¶ 26. The next day, she discovered that she had accumulated points for her call-out on April 26, which was supposed to have been the first day of her medical leave, which would not have resulted in accumulated points. *Id.* ¶ 27. When Plaintiff spoke with Dimitri about the situation, he said they would meet with Walmart's human resources representative the following week. *Id.* ¶ 28.

On May 4, 2023, Plaintiff worked for approximately one hour when she was summoned to meet with the human resources representative. *Id.* ¶ 29. At that meeting, the representative told Plaintiff her employment was being terminated as Plaintiff had "cancelled her claim" with Sedgwick and therefore had accumulated too many points due to her absences. *Id.* ¶ 30. Plaintiff stated that she had not cancelled her claim and that she had called out of work only after a Sedgwick representative indicated that her request for medical leave was approved. *Id.* ¶ 31. Plaintiff asked the Defendant to contact Sedgwick to confirm that Plaintiff had not cancelled the claim and that her absences should be covered by medical leave, but Walmart's human resources representative told Plaintiff she would have to speak with Sedgwick herself and that Walmart would be upholding her termination. *Id.* ¶ 32. The representative also noted that Walmart could have "helped [Plaintiff]" had she "filed a police report" earlier with respect to her sexual assault. *Id.* ¶ 33.

3

After leaving Walmart's premises, Plaintiff immediately contacted Sedgwick, which told her that had she requested four days of leave instead of three, the leave would have been approved. *Id* ¶ 34. At no time prior was Plaintiff told that the leave had not been approved, nor was Plaintiff advised that there was a certain number of days she needed to request in order to receive approval for her leave. *Id.* ¶ 35. Plaintiff then attempted to file an ethics complaint with Walmart's corporate office regarding her termination. *Id.* ¶ 36. Defendant told Plaintiff she would need to speak with the manager of the location at which she worked in person. *Id.* ¶ 37. After numerous calls and two attempts to speak with the store manager, around October of 2023, Defendant Walmart's department manager consented to take a photo of a note written by Plaintiff describing the situation to the store manager. *Id.* ¶ 38. Plaintiff never received a response from Defendant. *Id.* ¶ 39.

Plaintiff alleges that Defendant refused to provide reasonable accommodations for her mental health and refused to engage in a meaningful back and forth discussion of the need for a reasonable accommodation. *Id.* ¶ 40. Plaintiff also alleges that Defendant's primary motivation for terminating Plaintiff was based on Plaintiff's sex and mental health disability. *Id.* ¶ 41. Plaintiff further alleges that Defendant, through its employees, was hostile to Plaintiff's sexual assault, and terminated her because of that animus. *Id.* ¶ 42. Because of this termination, Plaintiff alleges she has sustained assorted damages including "great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well [as] emotional distress, humiliation, pain and suffering and other damages[.]" *Id.* ¶ 43.

On April 3, 2025, Plaintiff instituted this action before this Court, ECF No. 1, and amended her Complaint on July 1, 2025, ECF No. 14. On July 24, 2025, Defendant filed the instant Motion to Dismiss, ECF No. 18, to which Plaintiff responded on August 6, 2025, ECF No. 19. Defendant filed a Reply on August 20, 2025. ECF No. 20. Accordingly, the Motion is ripe for consideration.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (citation omitted). A complaint is plausible on its face when the plaintiff pleads a factual contention that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, courts must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

A complaint need not establish a prima facie case of discrimination to survive a motion to dismiss. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016). Instead, plaintiffs need only "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]," *Fowler*, 578 F.3d at 213 (citation omitted), and "must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests," *Bayer v. Pocono Med. Ctr.*, No. 3:13-1900, 2014 WL 3670499, at *4 (M.D. Pa. July 23, 2014) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

## III.   DISCUSSION

Defendant moves for the Court to dismiss Counts I and IV of the Amended Complaint in their entirety and Count III of the Amended Complaint to the extent that it purports to allege sex discrimination. ECF No. 18-2 at 1. For the reasons discussed below, the Court grants the Motion

to Dismiss as to Count I as well as Count III insofar as it states a sex discrimination claim without prejudice,[1] and denies the Motion to Dismiss as to Count IV.

### A. Plaintiff Fails to State a Claim for Sex Discrimination

Plaintiff alleges a Title VII violation on the basis of sex in Count I and a violation of the Pennsylvania Human Relations Act on the basis of sex and disability in Count III of her Amended Complaint. Am. Compl. ¶¶ 44–52, 63–70. Defendant moves to dismiss all claims based on sex discrimination. ECF No. 18-2 at 4.

Pursuant to Title VII, it is unlawful "for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Claims under Title VII and the Pennsylvania Human Relations Act are analyzed under the same analytical framework. *Qin v. Vertex, Inc.*, 100 F.4th 458, 470 (3d Cir. 2024). A plaintiff may state a Title VII claim for discrimination under either a "pretext" theory—set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)—or a "mixed-motive" theory—set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). *Connelly*, 809 F.3d at 787. To proceed under a pretext theory, a plaintiff must show that the employer's consideration of the impermissible factor—here, the impermissible factor alleged is sex—was a "determinative factor" in the adverse employment decision. *Whetstine v. Woods Servs.*, No. 21-02289, 2022 WL 221526, at *4 (E.D. Pa. Jan. 24, 2022); *see McDonnell Douglas*, 411 U.S. at 804. To proceed under a mixed-motive theory, a plaintiff may show that the adverse employment decision was "the result of multiple factors, at least one of which is illegitimate," but must ultimately prove that the impermissible

---

[1] Plaintiff requested that any dismissal be without prejudice to allow her to amend the Complaint "to more specifically plead facts giving rise to her FMLA retaliation and sex discrimination claims." ECF No. 19-1 at 7.

factor was a "motivating factor" of the decision. *Whetstine*, 2022 WL 221526, at *4 (citation omitted); *see Price Waterhouse*, 490 U.S. at 244–45.

In the instant case, Plaintiff's Amended Complaint does not state which theory she intends to pursue,[2] but at the motion to dismiss stage, the plaintiff need not specify the theory she wishes to proceed under because the distinction between the two theories lies in the evidence the employee is able to put forward regarding the employer's bias. *Connelly*, 809 F.3d at 788. In fact, the Third Circuit has stated that "even at trial, an employee may present his case under both theories" if the judge decides that both theories are applicable. *Id.* (citation omitted). For purposes of determining whether the Plaintiff has sufficiently pleaded a Title VII claim for sex discrimination, the Court must evaluate whether Plaintiff's Amended Complaint alleges "sufficient facts to raise a reasonable expectation that discovery will uncover that her status as a woman played either a motivating or determinative factor in" Defendant's decision to terminate her employment. *Whetstine*, 2022 WL 221526, at *4 (cleaned up).

Whether Plaintiff's sex played a motivating or determinative factor in Walmart's decision to terminate her employment can be shown either through direct evidence of the employer's discrimination or through indirect evidence that creates an inference of discrimination. *Magerr v. City of Philadelphia*, No. 15-4264, 2016 WL 1404156, at *4 (E.D. Pa. Apr. 11, 2016). Direct

---

[2] Plaintiff's Response suggests that she is advancing a claim for sex discrimination under the pretext theory, arguing that she has sufficiently alleged the elements required for establishing a prima facie case of discrimination under the burden-shifting framework set out in *McDonnell Douglas* even though she does not cite the case itself. *See* ECF No. 19-1 at 8–9 (listing out the elements for a prima facie case pursuant to the *McDonnell Douglas* standard); *May v. PNC Bank*, 434 F. Supp. 3d 284, 293–94 (E.D. Pa. 2020) (identifying those same elements for establishing a prima facie case under the *McDonnell Douglas* framework). Plaintiff's Amended Complaint may be advancing a mixed-motive theory of sex discrimination as it alleges that "Plaintiff's membership in a protected class was a *motivating factor* in Defendants' [sic] adverse actions and conduct." Am. Compl. ¶ 47 (emphasis added). In any case, there is no need presently to determine which theory is applicable to resolve the issues on the Motion to Dismiss.

evidence of discrimination is evidence that "demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (cleaned up). Thus, direct evidence must be both "strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor" in the defendant's decision and must be "connected to the decision being challenged by the plaintiff." *Id.* (citation omitted).

Plaintiff's Amended Complaint alleges no facts constituting direct evidence of the Defendant's discrimination. The Amended Complaint does not allege that Defendant or anyone employed by Defendant made any statements or took any actions that would indicate the existence of a discriminatory attitude or that Plaintiff's termination was motivated by a discriminatory attitude. The only plausible evidence of Defendant's animus towards Plaintiff is an alleged remark by Defendant's human resources representative that had Plaintiff "'filed a police report' earlier with respect to her sexual assault, that Walmart could have 'helped [Plaintiff].'" Am. Compl. ¶ 33. This statement, however, does not demonstrate that the human resources representative had a discriminatory attitude towards Plaintiff because of her sex. Further, Plaintiff does not allege that the representative was a decisionmaker at Walmart with respect to Plaintiff's termination or that the statement was connected to the decision to terminate Plaintiff's employment.

To plausibly allege facts giving rise to an inference of intentional discrimination, a plaintiff may either "(1) allege that similarly situated employees who were not members of the same protected class were treated more favorably under similar circumstances; or (2) allege facts that otherwise show a causal nexus between the employee's membership in a protected class and the adverse employment action." *Magerr*, 2016 WL 1404156, at *8. Here, the Amended Complaint does not identify any similarly situated male employees who were treated more favorably than

8

Plaintiff under similar circumstances. The Amended Complaint also fails to allege any link between the Plaintiff's status as a woman and the Defendant's decision to terminate her employment. Plaintiff merely alleges that her "membership in a protected class was a motivating factor in Defendants' [sic] adverse actions and conduct. Specifically, the Defendant's decision to terminate the Plaintiff's employment would not have occurred but for the nature of Plaintiff's need for medical leave which would not have happened but for her sex." Am. Compl. ¶¶ 47–48.

Even accepting all alleged statements as true, Plaintiff has failed to allege facts that would lead to an inference of unlawful discrimination based on her sex. Plaintiff pleads that she is a woman and that she was terminated, *id.* ¶¶ 46, 65, but pleads no causal nexus between the fact that she is a woman and the fact that she was terminated. Instead, Plaintiff posits an attenuated chain of but-for occurrences that begin with a terrible sexual assault: but for her being a woman, she would not have been sexually assaulted; but for her sexual assault, she would not have needed to request time off work; but for the points accumulated from her taking off work, she would not have been fired. *Id.* ¶ 48; ECF No. 19-1 at 9. Lacking from her allegations is any factual matter that Walmart treated Plaintiff differently because of her sex. Plaintiff has not alleged any facts that could give rise to a reasonable inference that Walmart terminated Plaintiff's employment because she is a woman. Rather, Plaintiff has alleged a sexual assault that occurred outside of work and a termination that occurred because she took off too many days. *See* Am. Compl. ¶¶ 10, 30.

Therefore, the Court finds that the Amended Complaint does not sufficiently allege facts that, if true, would plausibly establish that Plaintiff's sex was either a motivating or determinative factor in Defendant's decision to terminate her employment. Accordingly, the Court dismisses Count I in its entirety and Count III to the extent it alleges sex-based discrimination.

### B. Plaintiff's FMLA Retaliation Claim Survives the Motion to Dismiss

Plaintiff also alleges a violation of the FMLA for retaliation under 29 U.S.C. § 2601 et seq. (Count IV). Am. Compl. ¶¶ 71–76. Defendant moves to dismiss Count IV because there are "no well-pleaded factual allegations that Plaintiff's employment was terminated because of current and/or prospective FMLA eligibility." ECF No. 18-2 at 5.

The FMLA defines an eligible employee as "an employee . . . who has been employed by the employer for at least 12 months." 29 C.F.R. § 825.110(a)(1). The statute also requires the employee to have "been employed for at least 1,250 hours of service during **the 12–month period immediately preceding** the commencement of the leave." 29 C.F.R. § 825.110(a)(2) (emphasis added). Here, Plaintiff alleges that she started working at Walmart on May 1, 2022, Am. Compl. ¶ 9; called out on April 26, 27, and 28 of 2023, *id.* ¶ 25; and was terminated on May 4, 2023, *id.* ¶¶ 29–30. On its face, the Amended Complaint alleges that Plaintiff had **not** been employed by Walmart for at least twelve months prior to the commencement of her leave. Accordingly, she was not an eligible employee under the FMLA at the time that she took her leave starting on April 26, 2023.

Plaintiff's Response, however, correctly states that Plaintiff may be eligible for prospective FMLA leave upon crossing the twelve-month employment threshold in the week following her initial time off. *See* ECF No. 19-1 at 8. The FMLA requires that employees "provide the employer at least 30 days advance notice before FMLA leave is to begin" or "as soon as practicable." 29 C.F.R. § 825.302(a). This notice could be given by currently non-eligible employees for leave that will "commence once they become eligible employees." *Beffert v. Pa. Dep't of Pub. Welfare*, No. 05-43, 2005 WL 906362, at *3 (E.D. Pa. Apr. 18, 2005). Thus, a currently non-eligible employee that makes a request for FMLA leave to commence after becoming an "eligible employee"—i.e., after having been employed for twelve months—and is subsequently fired before the start of the

leave can bring a claim for retaliation under the FMLA. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). The Parties do not dispute that Plaintiff suffered an adverse employment decision. "Termination from employment qualifies as an adverse employment action." *Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 434 (W.D. Pa. 2009). However, Defendant argues that Plaintiff did not make a valid request for FMLA leave and "does not allege any facts which could plausibly give rise to a reasonable inference that her termination was causally linked to her requested leave." ECF No. 18-2 at 6.

To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave, but they are not required to "expressly assert rights under the FMLA or even mention the FMLA." *Lichtenstein*, 691 F.3d at 303 (citing 29 C.F.R. § 825.303(b)). An employee satisfies the notice requirement by providing her employer with enough information to show that she *may* need FMLA leave. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402–03 (3d Cir. 2007) (citing *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005)). The employee does not need to request specific days or periods of time off for notice to be adequate so long as the employee conveys to her employer the reason for needing leave. *Mascioli*, 610 F. Supp. 2d at 435; *Sarnowski*, 510 F.3d at 403 ("[W]here courts have found notice to be deficient, it has been because the employee failed to convey the reason for needing leave."). The "critical test" for whether an employee met the notice requirement is "how the information

conveyed to the employer is reasonably interpreted," which is generally a question of fact. *Lichtenstein*, 691 F.3d at 303 (citation omitted).

Here, the Amended Complaint alleges that prior to calling out from work on April 25, 2023, Plaintiff had informed her team leader, Dimitri, on April 23, 2023 that she was sexually assaulted earlier that same day. Am Compl. ¶¶ 16, 19–20. When making her leave request with Defendant's third-party leave administrator, Sedgwick, Plaintiff also told Sedgwick's representative that she had recently suffered a sexual assault. *Id.* ¶ 23. So although Plaintiff did not request further days off following her return to work on April 29, 2023, she had previously conveyed to Defendant the reason for her prior leave request. Accordingly, Defendant was aware that Plaintiff had recently been the victim of a sexual assault and could make a valid request for future FMLA leave for the purpose of treating serious medical conditions resulting from the sexual assault. Therefore, the Court finds that these allegations give rise to a reasonable expectation that discovery will produce evidence showing that Plaintiff had invoked her right to prospective FMLA leave, or separately, that Defendant terminating her employment before she had the opportunity to request eligible FMLA leave was "preemptive or anticipatory retaliation." *Kegerise v. Susquehanna Twp. Sch. Dist.*, No. 14–0747, 2015 WL 4232534, at *4 (M.D. Pa. July 13, 2015) (declining to dismiss FMLA retaliation claim premised on facts alleging preemptive retaliation where employee had not yet requested leave).

The Court now turns to the question of whether Plaintiff's termination was causally related to her invocation of FMLA rights. "Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). Courts have

generally found a temporal proximity of seven days to be in the realm of what suffices as "unduly suggestive." *Lichtenstein*, 691 F.3d at 307 (denying summary judgment where the temporal proximity was seven days and collecting cases finding unduly suggestive two days, four days, five days, and three weeks). Here, Plaintiff requested leave on April 25, 2023 and was fired nine days later on May 4, 2023. Am Compl. ¶¶ 19, 29–30. The temporal proximity between Plaintiff's request for leave and her termination is "unduly suggestive" and creates an inference that she was fired to prevent her from taking future FMLA leave.

Even if nine days is not unduly suggestive, looked at together with Plaintiff's other allegations, the Amended Complaint as a whole raises a reasonable expectation that discovery will produce evidence that Defendant's decision to terminate Plaintiff's employment was motivated by the expectation that she would take FMLA leave once she became eligible for it. On April 30, 2023, Plaintiff discovered that she had accumulated points for her requested time off and brought this to the attention of her team lead—she was fired four days later when she was eligible for FMLA leave. *Id.* ¶¶ 27–30. Plaintiff had returned to work from her time off on April 29, 2023 and worked without incident that day. *Id.* ¶ 26. Plaintiff's allegations that she was fired only after raising to her team lead the issue of her time off for medical leave purposes and only after becoming eligible for FMLA leave suggest that "Defendant's decision to terminate the Plaintiff's employment was motivated by the expectation that Plaintiff would require FMLA leave to treat her for her post traumatic stree [sic] disorder following her assault." *Id.* ¶ 74. The Court finds that it is reasonable to expect that discovery will produce evidence showing that Defendant was motivated to fire Plaintiff to prevent her from taking future FMLA leave.

Accordingly, the Court finds that Count IV is well-pled.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant Walmart's Motion to Dismiss (ECF No. 18). Count I of the Amended Complaint is dismissed in its entirety and Count III is dismissed only to the extent that it alleges sex discrimination. Count IV remains.

An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**
_____
**CHAD F. KENNEY, JUDGE**